IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

THOMAS MOORE, INDIVIDUALLY
AND ON BEHALF OF ALL WRONGFUL
DEATH BENEFICIARIES AND HEIRS AT
LAW OF CHARLES MOORE, DECEASED
THELMA COLLINS, INDIVIDUALLY
AND ON BEHALF OF ALL WRONGFUL
DEATH BENEFICIARIES AND HEIRS AT
LAW OF HENRY DEE, DECEASED                                                         PLAINTIFFS

v.                                                                  CIVIL ACTION NO. 3:09CV236TSL-JCS

FRANKLIN COUNTY, MISSISSIPPI                                                        DEFENDANT


GOVERNMENT'S MEMORANDUM TO ACCOMPANY RESPONSE
IN OPPOSITION TO MOTION FOR CONTEMPT
BY FRANKLIN COUNTY, MISSISSIPPI

   **COMES NOW**, counsel for the United State of America, Stan Harris, Acting United States Attorney for the Southern District of Mississippi, on behalf of the Federal Bureau of Investigation ("FBI"), and submits this Memorandum to Accompany Response in Opposition to Motion for Contempt By Franklin County, Mississippi, to wit:

   **1. Franklin County's assertion that the FBI's failure to produce totally unedited copies of all of the materials provided is incorrect.**

   The FBI has disclosed all documents previously released to the public by the Government. The FBI produced the documents requested by the defendant, redacted only to the extent necessary to protect grand jury information, to observe the law enforcement privilege, the attorney client privilege and to avoid disclosing the identities of individuals in documents attributed to a

-1-

confidential source.

The Defendant appears to make a blanket objection to all redacted portions of the materials produced. Defendant, if it objects to any portion of the redacted material, should make a specific objection with grounds therefor. Graham v. Mukasey, 247 F.R.D. 205, 207 (D.D.C. 2008) (denying for *in camera* review of documents since ["plaintiff] has not identified a single specific document as to which he argues that the FBI deletion code...is inadequate...").

### A. Grand Jury Secrecy

"Federal courts long have recognized that secrecy is essential to maintaining the integrity of the grand jury system." *In re Grand Jury Testimony*, 832 F.2d 60, 62 (5th Cir. 1987) (*citing United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 428 (1983); *United States v. Procter & Gamble*, 356 U.S. 677, 681 (1958)). Rule 6(e) of the Federal Rules of Criminal Procedure codifies this.

### B. Law Enforcement Privilege

In addition to recognition in the federal common law, the law-enforcement privilege (sometimes referred to as the investigatory-files privilege) is also codified in federal law. *See* 28 C.F.R. § 16.26(b)(5) (prohibiting Department of Justice employees from disclosing "investigatory records compiled for law enforcement purposes"); 5 U.S.C. § 552b(c)(7) (prohibiting disclosure of "investigatory records compiled for law enforcement purposes, or information which if written would be contained in such records" that would "interfere with enforcement proceedings" or "disclose investigative techniques and procedures.").

Franklin County argues that the law-enforcement privilege doesn't apply in part because "The materials the Defendant had requested and which the FBI was refusing to produce related to a matter over four decades old" (Defendant's Motion for Contempt at ¶ 4). While the Fifth Circuit in *In re*

*United States Dep't of Homeland Sec.*, noted that a law-enforcement privilege applies to ongoing investigations, it did so in reference to the law-enforcement privilege as recognized in its "case law" and "federal common law." 459 F.3d 565, 569 (5th Cir. 2006). No reference was made to more specific statutory provisions cited above delineating the scope of the law-enforcement privilege, which contain no express time constraint. *Id.* Moreover, the Fifth Circuit's reference to time limitations on a law enforcement privilege must be taken in context of its adoption of the *Frankenhauser* test. *Id.* at 570 (*citing Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)). Notably, "whether the police investigation has been completed" is just one of ten factors of the *Frankenhauser* test, which is to be applied "in a flexible manner" with "considerable leeway" afforded the reviewing court.

      Moreover, there are compelling reasons why the law-enforcement privilege should not be subject to bright-line time cut-offs and limits. As one court reasoned:  It is clear that if investigatory files were made public subsequent to the termination of enforcement proceedings, the ability of any investigatory body to conduct future investigations would be seriously impaired. Few persons would respond candidly to investigators if they feared that their remarks would become public record after the proceedings. Further, the investigative techniques of the investigating body would be disclosed to the general public. *Aspin v. United States Dep't of Def.*, 491 F.2d 24, 30 (D.C. Cir. 1974); *accord Frankel v. Secs. & Exch. Comm'n*, 460 F.2d 813, 817 (2d Cir. 1972); *see also United States v. Ketner*, 566 F. Supp. 2d 568, 580-81 (W.D. Tex. 2008) ("[T]he Government may continue to withhold investigatory files even when the investigation in question has concluded."); *Borchers v. Commercial Union Assurance Co.*, 874 F. Supp. 78, 80 (S.D.N.Y. 1995) ("Even if [an] investigation were closed,...plaintiffs would not necessarily be entitled to review the files of a criminal

investigation, including one concerning their own activities.").

In the end, regardless of whether the Court views the law-enforcement privilege broadly or narrowly, Franklin County has not identified with particularity any document where the sole privilege was asserted. Thus, overruling the application of the law-enforcement privilege as to any one particular document would not afford Franklin County the blanket production of all documents they presently seek.

**4. Documents Pertaining To A Confidential Source**

Before producing documents to the defendant, memoranda of witness interviews were pulled and sent to the appropriate personnel for review for releasability. Safeguards were put into place to prevent improper dissemination of information.

First, the parties filed a consent protective order to ensure that Privacy Act protected information would not be improperly disseminated or used outside the confines of the present litigation. The FBI also redacted certain information from its 302s (i.e., witness interview memoranda) on the basis of "information, the disclosure of which would tend to reveal the identity of an informant," and "information, the disclosure of which would tend to identify a source of information, where confidentiality is expressed or implied. review process and redaction codes).

It is well-settled that the government enjoys a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Brock v. On Shore Quality Control Specialists, Inc.*, 811 F.2d 282, 283 (5th Cir. 1987). The privilege applies in criminal and civil cases. *Id.* "In civil cases, the privilege is stronger because many of the constitutional rights guaranteed to criminal defendants, which in criminal trials militate in favor of disclosure, do not apply." *In re Kleberg County, Texas*, 86 Fed. Appx. 29, 32 (5th Cir.

2004). The privilege applies to both the identity of the informant and any information "that would tend to reveal any informant in any way." *Id.* at 33 n.4. "The purpose for allowing the informers privilege ... is to make retaliation impossible." *Brock*, 811 F.2d at 284. "The government may invoke this privilege as a right and need not make a threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege." *Kleberg County*, 86 Fed. Appx. at 32; *see also Dole v. Local 1942, Intern. Broth. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989) ("When asserting the privilege the government need not make a threshold showing that reprisal or retaliation is likely, because of the significant policy consideration behind the privilege, as well as the difficulty of such proof. Rather, the government is granted the privilege as of right."). The United States' "interest in maintaining the confidentiality of its informants is substantial" since "[i]nformants are a vital part of society's defense arsenal." *Id.* at 33. As one court summarized: [I]t has been the experience of law enforcement officers that the prospective informer will usually condition his cooperation on an assurance of anonymity, fearing that if disclosure is made, physical harm or other undesirable consequences may be visited upon him or his family. By withholding the identity of the informer, the government profits in that the continued value of informants placed in strategic positions is protected, and other persons are encouraged to cooperate in the administration of justice. *United States v. Tucker*, 380 F.2d 206, 213 (2d Cir. 1967).

Defendant also makes reference to the fact that one of the informants, Ernest Gilbert, is now deceased. (Defendant's Motion for Contempt at ¶ 6). Indeed, the privilege belongs not to the informant, but to the United States. *Kleberg County*, 86 Fed. Appx. at 32. Likewise, the informant's privilege is based on the policy justifications of preventing retaliation against not only the informant, but his family too, and the encouragement of informant cooperation in not only present matters, but

future investigations too. *Tucker*, 380 F.2d at 213. Thus, the informant privilege survives even the death of the informant. *See, e.g., United States v. Dexta*, 136 Fed. Appx. 895, 905 (6th Cir. 2005) ("We are also not persuaded by Dexta's argument that there is little public interest in protecting the identity of the deceased informant. In fact, one district court opinion from Michigan that pre-dates the Sixth's Circuit's holding in *Dextra* suggested that the informant's privilege would extinguish at death. *Smith v. City of Detroit*, 212 F.R.D. 507, 510 (E.D. Mich. 2003) (disclosure of the deceased informant's identity might lead to retribution against members of his/her family."); *Kiraly v. Fed. Bureau of Investigation*, 728 F.2d 273, 278-79 (7th Cir. 1984) (rejecting proposition that death extinguishes privilege since "the concern of the court should also be upon the effect a disclosure would have on other informants.") (*citing Stassi v. United States Dep't of Justice*, No. 78-0538 at *10 (D.D.C. 1979) (prohibiting disclosure "because the court concludes that the disclosure of such information notwithstanding the fact that the informant is deceased, would inhibit other informants from coming forward.")).

In addition, Defendant makes reference to the fact that the news media reported and verified that Ernest Gilbert was an informant for the FBI. This disclosure does not waive the informant privilege for this entire investigation. As previously stated, details made publicly available or confirmed in public filings have been released to the defendant. Informant information that has not already been publicly released must be provided continued protection under the informant privilege to prevent any further disclosure. A break in these confidentiality agreements with informants would impact the FBI's ability to recruit future informants. A lack of informant information would deprive the FBI of a crucial weapon against criminals and criminal enterprises and any depletion of this resource will negatively affect the FBI's ability to fight crime. For these reasons, neither an

informant's death nor the informant's previous public statements eliminate the important policy and security objectives that require the FBI to protect an informant's identity and the information he or she provides.

Thus, any articulated "need" Franklin County may claim for the materials would be outweighed by a countervailing government interest in protecting past and present informants and their families against retribution, and ensuring any present or future informants that their identities will be kept confidential. *See, e.g., Kleberg County*, 86 Fed. Appx. at 33 (threat of retaliation and refusal to cooperate justifies withholding informant information); *Dexta*, 136 Fed. Appx at 905 ("[D]isclosure of...[an] informant's identity might lead to retribution against members of his/her family."); *Kilray*, 28 F.2d at 278 (disclosure of confidential informant would have "chilling effect" of cooperation with government since "informants are placed in the position of subjecting themselves or their family to potential retribution.").

## IV. Conclusion

**WHEREFORE, PREMISES CONSIDERED**, the United States of America respectfully requests that the Defendant's Motion for Contempt be denied.

Respectfully submitted,
UNITED STATES OF AMERICA

STAN HARRIS
Acting United States Attorney

By:  /s/ Edward O. Pearson
     EDWARD O. PEARSON
     Assistant United States Attorney
     188 East Capitol Street, Suite 500
     Jackson, Mississippi  39201
     Telephone No. 601. 973.2887
     Facsimile No.: 601. 965.4032
     Mississippi Bar Number 4080

**OF COUNSEL:**
Jennifer M. Olkiewicz, Esq.
The Federal Bureau of Investigation

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2009, I electronically filed the foregoing **Response in Opposition to Motion For Contempt By Franklin County, Mississippi**, with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

**Legal Counsel for the Defendant - Franklin County, Mississippi**
**Michael Wolf, Esq.**
**PAGE, KRUGER & HOLLAND, P.A.**
**10 Canebrake Boulevard, Suite 200**
**Jackson, Mississippi 39232**

/s/Edward O. Pearson
EDWARD O. PEARSON
Assistant United States Attorney